1  **WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK LLP**
2  Frank Busch (258288)
   busch@wvbrlaw.com
3  100 Pine Street, Suite 2250
   San Francisco, CA  94111
4  Telephone: (415) 357-8900

5  **PALLAS PARTNERS (US) LLP**
   Duane L. Loft*
6  Duane.Loft@pallasllp.com
   Melissa J. Kelley*
7  Melissa.Kelley@pallasllp.com
   Brianna Hills Simopoulos*
8  Brianna.Simopoulos@pallasllp.com
   John McAdams*
9  John.McAdams@pallasllp.com
   75 Rockefeller Plaza
10 New York, NY 10019
   Telephone: (212) 970-2300

11 *Pro hac vice applications forthcoming

12 Counsel for Petitioners

13

14

15                **UNITED STATES DISTRICT COURT**
                  **NORTHERN DISTRICT OF CALIFORNIA**
16

17 In re Application of

18 Oasis Focus Fund LP and Quadre Investments, L.P.,
19
   Petitioners, for an Order Pursuant to 28 U.S.C. §
20 1782 to Conduct Discovery For Use In a Foreign Proceeding.
21

22

23

Case No. 23-
_____

**MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782**

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF CONTENTS**

APPLICATION ................................................................................................................ 1

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ............................................................................................................. 4

        A.     Parties to the Foreign Proceeding and the Merger. ................................. 4

        B.     The Appraisal Proceeding. ...................................................................... 6

        C.     Respondents and the Discovery Sought. .................................................. 7

ARGUMENT ................................................................................................................. 8

    I.     The Application Satisfies the Three Statutory Requirements of
          28 U.S.C. § 1782 ................................................................................... 8

        A.     Respondents are "Found In" this District. ............................................ 8

        B.     The Discovery Sought is "For Use" in a Foreign Proceeding. ............... 11

        C.     Petitioners are  "Interested Person[s]." .................................................. 12

    II.    The Discretionary *Intel* Factors Weigh in Favor of Discovery. ............................ 13

        A.     *Intel* I: Respondents are Nonparticipants in the Appraisal
              Proceeding. ........................................................................................... 13

        B.     *Intel* II: The Grand Court Will Be Receptive to the Requested
              Discovery .............................................................................................. 14

        C.     *Intel* III: Petitioners are Not Circumventing Foreign Proof-
              Gathering Restrictions. ......................................................................... 17

        D.     *Intel* IV: The Subpoenas are Not Unduly Burdensome. ........................... 18

CONCLUSION............................................................................................................... 21

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE
PURSUANT TO 28 U.S.C. § 1782

# TABLE OF AUTHORITIES

**Cases**

*AbbVie Inc., et al. v. Boehringer Ingelheim Int'l GmbH*,
No. 17–1065–MSG, 2018 WL 2337133 (D. Del. May 23, 2018)................................................. 19

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*,
785 F. Supp. 2d 434 (S.D.N.Y. 2011) ..................................................................................... 16

*de Leon v. Clorox Company*,
No. 19-mc-80296-DMR, 2020 WL 4584204 (N.D. Cal. Aug. 10, 2010) ................................... 17

*Euromepa, S.A. v. R. Esmerian, Inc.*,
51 F.3d 1095 (2d Cir. 1995) ...................................................................................................... 20

*Facebook, Inc. v. Banana ADS LLC, et al.*
No. CV 11–03619–YGR (KAW), 2013 WL 1873289 (N.D. Cal. Apr. 30, 2013)......................... 9

*First Am. Corp. v. Price Waterhouse LLP*,
154 F.3d 16 (2d Cir. 1998) ........................................................................................................ 20

*FourWorld Event Opportunities, LP v. Houlihan Lokey, Inc.*,
No. 1:21-mc-1019-CAS (JPR), ECF No. 56 (C.D. Cal. Jan. 6, 2022) ................................... 16, 19

*Gushlak v. Gushlak*,
486 Fed. App'x 215 (2d Cir. 2012) ............................................................................................ 16

*HRCHainan Holding Co., LLC v. Yihan Hu*,
No. 19-MC-80277-TSH, 2020WL 906719 (N.D. Cal. Feb. 25, 2020) ....................................... 20

*Illumina Cambridge Ltd. v. Complete Genomics, Inc.*,
No. 19-mc-80215-WHO(TSH), 2020 WL 820327 (N.D. Cal. Feb. 19, 2020) .................... passim

*In Matter of Appl. of Action & Prot. Found.*,
No. C 14–80076 MISC EMC (LB), 2014 WL 2795832 (N.D. Cal. June 19, 2014).................... 8

*In re Accent Delight Int'l Ltd.*,
869 F.3d 121 (2d Cir. 2017) ...................................................................................................... 12

*In re Appl. of Temporary Servs. Ins. Ltd.*,
No.09-MC-48S(Sr), 2009 WL 2843258 (W.D.N.Y Aug. 28, 2009)........................................... 12

*In re Application of Athos Asia Event Driven Master Fund*,
No. 1:21-MC-00208-GBF, ECF No. 8 (S.D.N.Y. Mar. 3, 2021)............................................... 16

*In re Application of Athos Asia Event Driver Master Fund*,
No. 4:21-MC-00153-AGF, 2021 WL 1611673 (E.D. Mo. Apr. 26, 2021) ................................. 16

iii

*In re Application of Credit Suisse Virtuoso SICAV-SIF In Respect of the Sub-Fund Credit Suisse (Lux) Supply Chain Finance Fund*,
No. 21-MC-80308-JCS, 2022 WL 1786050 (N.D. Cal. June 1, 2022) ................................. 17, 18

*In re Aso*,
19 MC 190 (JGK) (JLC), 2019 WL 2345443 (S.D.N.Y. June 3, 2019)...................................... 19

*In re Bayerische Motoren Werke AG*,
No. MC-22-00016-PHX-SPL, 2022 WL 1092804 (D. Ariz. Apr. 12, 2022)............................. 18

*In re Belparts Grp.*, N.V.,
No. 3:21-MC-0062 (VAB), 2021 WL 4942134 (D. Conn. Oct. 22, 2021) ................................. 14

*In re del Valle Ruiz*,
939 F.3d 520 (2d Cir. 2019) .................................................................................................. 9, 11

*In re Dickson*,
No. 20-MC-51 (RA), 2020 WL 550271 (S.D.N.Y. Feb. 4, 2020) ............................................. 16

*In re Evenstar Master Fund SPC*,
No. 20-MC-418 (CS) (JCM), 2021 WL 3829991 (S.D.N.Y. Aug. 27, 2021), *aff'd*, 2021 WL 5498283 (S.D.N.Y. Nov. 23, 2021)................................................................................................ 14

*In re FourWorld Event Opportunities, LP*,
No. 21-mc-00283-RGS, ECF No. 6 (D. Del. July 29, 2021) ................................................. 16, 21

*In re Gushlak*,
No. 11–MC–218 (NGG), 2011 WL 3651268 (E.D.N.Y. Aug. 17, 2011) .............................. 16,20

*In re Hattori*,
No. 21-mc-80236-TSH, 2021 WL 4804375 (N.D. Cal. Oct. 14, 2021) ...................................... 17

*In re Hopkins*,
No. 20-MC-80012-SVK, 2020 WL 733182 (N.D. Cal. Feb. 13, 2020)...................................... 16

*In re Kidd*,
No. 3:20-CV-00800 (KAD), 2020 WL 5594122 (D. Conn. Sept. 18, 2020) .............................. 14

*In re Koninklijke Philips N.V.*,
No. 17-MC-1681-WVG, 2018 WL 620414 (S.D. Cal. Jan. 30, 2018)........................................ 11

*In re Kuwait Ports Auth.*,
No. 20-MC-00046-ALC, 2021 WL 5909999 (S.D.N.Y. Dec. 13, 2021)............................... 16, 19

*In re Mireskandari*,
No. 12-CV-2865-IEG (DHB), 2012 WL 12877390 (S.D. Cal. Dec. 20, 2012) .................... 14, 17

iv

*In re Mut. Assistance of Local Court of Wetzlar, Germany*,
   17–mc–00078–SKO, 2018 WL 2183966 (E.D. Cal. May 11, 2018) ........................................... 8

*In re Nokia Techs. Oy*,
   No. 21MC1487 (MSB), 2022 WL 788702 (S.D. Cal. Mar. 15, 2022)........................................ 15

*In re Penner*,
   No. 17-CV-12136-IT, 2017 WL 5632658 (D. Mass. Nov. 22, 2017).......................................... 16

*In re Pioneer Corp. v. Technicolor, Inc.,*
   No. LA CV18-04524 JAK (SSx), 2018 WL 4961911 (C.D. Cal. Sept. 12, 2018)..................... 12

*In re PJSC Uralkali for an Ord. Pursuant to 28 U.S.C. § 1782*,
   No. C18-1673JLR, 2019 WL 291673 (W.D. Wash. Jan. 23, 2019)................................ 17, 19, 20

*In re Platinum Partners Value Arbitrage Fund L.P.*,
   583 B.R. 803 (Bankr. S.D.N.Y. 2018)...................................................................................... 16

*In re Premises Located at 840 140th Avenue NE, Bellevue, Washington*,
   634 F.3d 557 (9th Cir. 2011) ................................................................................................... 13

*In re Republic of Ecuador*,
   No. C-10-80225, 2010 WL 3702427 (N.D. Cal. Sept. 15, 2010)............................................... 14

*In re Request for Judicial Assistance from the Seoul Dist. Criminal Court*,
   555 F.2d 720 (9th Cir. 1977) ................................................................................................... 12

*In re Vahabzadeh*,
   No. 20-mc-80116-DMR, 2020 WL 5095131 (N.D. Cal. Aug. 28, 2020) .................................... 9

*In re Wallis*,
   No. 18-MC-80147-DMR, 2018 WL 5304849 (N.D. Cal. Oct. 24, 2018) ................................ 2, 8

*In re Wireless Facilities, Inc. Derivatives Litig.*,
   562 F. Supp. 2d 1098 (S.D. Cal. 2008) ................................................................................. 9, 10

*In re: Application of Joint Stock Co. Raiffeinsenbank*,
   No. 16-MC-80203-MEJ, 2016 WL 6474224 (N.D. Cal. Nov. 2, 2016) ............................... 15, 20

*Int'l Seaway Trading Corp. v. Target Corp.*,
   No. 0:20-mc-00086-NEB-KMM, 2021 WL 672990 (D. Minn. Feb. 22, 2021).......................... 21

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004) ........................................................................................................ passim

*Lew v. Moss*,
   797 F.2d 747 (9th Cir. 1986). ............................................................................................. 9, 10

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE
PURSUANT TO 28 U.S.C. § 1782

*Mees v. Buiter*,
   793 F.3d 291 (2d Cir. 2015) ................................................................................. 11, 17

*Palantir Techs., Inc. v. Abramowitz*,
   415 F. Supp. 3d 907 (N.D. Cal. 2019) ......................................................................... 15

*Qualcomm Inc for an Order Pursuant to 28 U.S.C. § 1782.*,
   No. 18-MC-80134-NC, 2018 WL 6660068 (N.D. Cal. Dec. 19, 2018) ...................................... 11

*United States v. $110,000 in U.S. Currency*,
   No. 21 C981, 2021 WL 2376019 (N.D. Ill. June 10, 2021) ........................................................ 21

*Walsh v. Tara Constr., Inc.*,
   No. 19-CV-10369-AK, 2022 WL 1913340 (D. Mass. June 3, 2022) ......................................... 21

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE
PURSUANT TO 28 U.S.C. § 1782

1

**APPLICATION**

2        Oasis Focus Fund LP and Quadre Investments, L.P. ("**Petitioners**") respectfully submit this

3   application (the "**Application**") pursuant to 28 U.S.C. § 1782 ("**Section 1782**") seeking an order: (a)

4   granting Petitioners leave to serve subpoenas (the "**Subpoenas**") on David Katsujin Chao and the

5   DCM Ventures Entities[1] (collectively, the "**Respondents**"); (b) directing Respondents to produce

6   the tailored materials described in the Subpoenas within thirty days of service of the Subpoenas; (c)

7   directing Respondent Chao to appear for a deposition, and the Respondent DCM Ventures Entities

8   to appear for a Rule 30(b)(6) deposition, in compliance with the Subpoenas on mutually agreeable

9   dates within a reasonable time after Respondents' confirmation of the final production in response

10  to the Subpoenas; and (d) granting any and all other relief to Petitioners as the Court deems just and

11  proper.

12

**PRELIMINARY STATEMENT**

13       Petitioners respectfully submit this Application pursuant to Section 1782 to take limited

14  discovery from an individual residing and entities found in this District for use in connection with an

15  appraisal proceeding filed in the Grand Court of the Cayman Islands (the "**Grand Court**") on July

16  15, 2022 (the "**Appraisal Proceeding**").  In the Appraisal Proceeding, Petitioners (along with other

17  dissenting shareholders) seek a determination of the fair value of their shares in 51job, Inc. ("**51job**"

18  or the "**Company**"), a Cayman Islands company that was delisted from the NASDAQ Global Select

19  Market and taken private on May 6, 2022.  Petitioners' shares were forcibly cancelled through a

20  merger (the "**Merger**") orchestrated by its majority shareholder, company insiders and affiliates, and

21  private equity funds (the "**Participants**"), the purpose of which was to enable the Participants to

22  acquire 100% control of the Company.  Mr. Chao served as the Chairman of the Company's board

23  of directors throughout the Merger's negotiation and approval, and signed the Proxy Statement filed

24

25

26  [1] The DCM Ventures Entities are: DCM Management Co., L.L.C.; DCM Management Co. VI, LLC;
    DCM Management Company IV, L.L.C.; DCM Management Company V, L.L.C.; and DCM
27  Management, Inc.

1

28  MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE
    PURSUANT TO 28 U.S.C. § 1782

by the Company in connection with the Merger.  DCM Ventures is an investment fund (of which Mr. Chao is the Co-Founder and General Partner) and is a shareholder of the Company.  Through this Application, Petitioners seek tailored and proportionate discovery from Respondents concerning the Merger's negotiation, re-negotiation, approval, and the fair value of the Company's shares—the core issues in the Appraisal Proceeding.

Section 1782 authorizes this Court to order discovery from any person or entity that resides or is found in this District to assist with pending or contemplated proceedings before a foreign tribunal.  Section 1782's broad applicability and "modest prima facie elements" reflect "Congress's goal of providing equitable and efficacious discovery procedures."  *In re Wallis,* No. 18-MC-80147-DMR, 2018 WL 5304849, at *4 (N.D. Cal. Oct. 24, 2018).  Petitioners' Application meets the statutory requirements of Section 1782: (i) Respondents "reside" or are "found" in this District because Mr. Chao resides in and maintains an office in this District (or, at a minimum, has significant contacts with this District), and the DCM Ventures Entities have their principal place of business in this District; (ii) the requested discovery is "for use" in a foreign proceeding, namely the Appraisal Proceeding; and (iii) Petitioners, as parties to the Appraisal Proceeding, easily meet the standard for an "interested person" under the statute.  In addition, each of the Supreme Court's factors that guide this Court's exercise of discretion under Section 1782 weigh decisively in favor of granting Petitioners' Application.  *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004).

*First*, Petitioners seek discovery from "nonparticipant[s] in the matter arising abroad."  *Id.*  Respondents are not parties to the Appraisal Proceeding or otherwise subject to the jurisdiction of the Grand Court.  As recognized in *Intel*, "nonparticipants in the foreign proceedings may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent §1782(a) aid."  *Id*

*Second*, "the nature of the foreign tribunal, the character of the proceeding underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance" all support granting Petitioners' Application.  *Id.*  There is no indication, let alone "authoritative proof," suggesting that the Grand Court might be unreceptive to Section 1782

2

1   assistance.  To the contrary, several U.S. courts have granted Section 1782 applications for discovery
2   in aid of Cayman Islands litigation, including appraisal proceedings in the Cayman Islands, and as
3   made clear in a recent Cayman Islands appraisal decision, *In The Matter of Nord Anglia Education,*
4   *Inc.*, (Unreported, Grand Court, Kawaley J, 17 March 2020) the Grand Court will accept and consider
5   the evidence sought here given its relevance in determining the fair value of the shares.[2]  Furthermore,
6   the Grand Court in the Appraisal Proceeding is aware that Petitioners may seek discovery through
7   Section 1782, and has placed no restrictions on them from doing so.

8         *Third,* the Application is not "conceal[ing] an attempt to circumvent foreign proof-gathering
9   restrictions or other policies of a foreign country." *Intel*, 542 U.S.. at 265.  The requested discovery
10  does not implicate any privilege or protection that would make it improper under Cayman Islands
11  law.

12        *Fourth*, the requested discovery is not "unduly intrusive or burdensome." *Id.*  The Subpoenas
13  are tailored to seek evidence addressing the fair value of Petitioners' shares in the Company and the
14  process that the Special Committee (defined below) and the Company undertook to negotiate,
15  approve, and recommend the Merger.

16        *Finally*, this Court should exercise its discretion to order production of any responsive
17  discovery that Respondents have in their possession, custody, or control, regardless of the physical
18  location of that discovery.  Section 1782 is extraterritorial in reach, and courts commonly order
19  discovery of documents located abroad.  Nor should the location of the requested discovery alter the
20  Court's discretion.  *Illumina Cambridge Ltd. v. Complete Genomics, Inc.*, No. 19-mc-80215-
21  WHO(TSH), 2020 WL 820327, at *10 (N.D. Cal. Feb. 19, 2020) ("concerns about producing
22  documents located outside the United States is largely anachronistic, as . . . documents and
23  information are often located in electronic storage, which can be accessed with equal effort from any
24  location").

25

26

27  ──────────────────
    [2] A copy of this decision is attached as Exhibit D to the Declaration of Justice Ingrid Mangatal.

28  ─────────────────────────────────────────────────────────────────
    3
    MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE
    PURSUANT TO 28 U.S.C. § 1782

1

2

### **FACTUAL BACKGROUND**

**A.**     **Parties to the Foreign Proceeding and the Merger.**

3

4

5

6

Petitioners Oasis Focus Fund LP and Quadre Investments, L.P. are members of the group of dissenting shareholders who formerly held shares in the Company and are parties to the Appraisal Proceeding.  *See* Declaration of Rocco Cecere in Support of Petitioners' Application ("**Cecere Decl.**") ¶ 6.

7

8

9

10

The Company was founded in 1998 and is headquartered in Shanghai, the People's Republic of China ("**PRC**").  Cecere Decl. ¶ 7.  The Company provides integrated human resources services in the PRC.  *Id.*  Before the Merger, the Company's stock was publicly traded on the NASDAQ Global Select Market (through American Depository Shares ("**ADS**")) under the JOBS symbol.  *Id.*

11

12

13

14

15

16

17

18

19

The Merger process first began in September 2020, during the peak of the COVID-19 pandemic, when the Company approached Rocketeer Management, a "strategic consultant, to explore potential strategic transactions, including possible minority or control transactions, mergers and acquisitions, debt financings or equity financings."  Cecere Decl. Ex. 1 ("**Proxy Statement**") at 28.  On September 21, 2020, the Company announced the formation of the special committee (the "**Special Committee**"), comprised of Messers. Li-Lang Chen and Eric He, two purportedly independent directors, to consider and negotiate proposed transactions and strategic alternatives.  *Id.* at 29.  This process culminated in the Company executing a merger agreement (the "**Original Merger Agreement**") on June 21, 2021.  *Id.* at 37.

20

21

22

23

24

25

26

The Original Merger Agreement was a non-arms' length transaction to take the Company private by a buyer consortium (the "**Buyer Consortium**"), which included Mr. Rick Yan (the Company's director, CEO and president), three of his associated investment vehicles, and several other funds—who had committed to "work exclusively with each other."  *Id.*  at i-ii, 33.  Moreover, the "Management Continuing Shareholders"—including Mr. Yan and his three investment vehicles, along with other Company management and related investment vehicles—"expressed unwillingness" to  "sell their shares in any other transaction involving the Company,"  and entered into a support

27

28

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE
PURSUANT TO 28 U.S.C. § 1782

4139-9239-7633, v. 39

agreement to vote in favor of the Merger.  *Id.* at 11, 43.  The Original Merger Agreement also did not require approval by a majority of the minority shareholders ("**MoM Protection**"), a common corporate law device used to protect minority shareholders from controlling shareholders.  *Id.* at 35. The Original Merger Agreement provided for consideration of US$79.05 per share and per ADS ("**Original Merger Price**").  *Id.* at 36.  This undervalued the Company's shares, which—as late as January 16, 2020—traded at US$91.72, and was called "opportunistic" by some market commentators.  Cecere Decl. ¶ 10; Cecere Decl. Ex. 7 at 3.

Following the execution of the Original Merger Agreement, the Company filed a Schedule 13E-3 form and draft proxy statement with the Securities and Exchange Commission on July 6, 2021. Cecere Decl. Ex. 2.  However, after that date, the Company went silent for four months, ignoring repeated attempts at correspondence by concerned shareholders.  Cecere Decl. ¶ 16.  Finally, on November 8, 2021, the Company issued a vaguely worded announcement that "certain members of the buyer consortium" had "been in consultation with Chinese regulators on recent regulatory changes in China that may be applicable to the Company and the [Original Merger]."  Cecere Decl. Ex. 3.  It is now clear from the Company's subsequent filings that the "consultations" with the PRC regulators were initiated in early August 2021, by members of the Buyer Consortium after discussions with Mr. Yan and the Company. There is a question as to why the Buyer Consortium approached certain PRC regulators (who are not specified in the Proxy Statement or any other materials) in circumstances where that contact ultimately lead to renegotiating the Original Merger Agreement on terms beneficial to the Buyer Consortium at the expense of the unaffiliated minority shareholders.  Cecere Decl. ¶ 16.

On January 12, 2022, the Buyer Consortium submitted to the Special Committee a proposal letter that changed the terms of the Original Merger Agreement, offering a dramatically reduced consideration of US$57.25 per share—or a *28% decrease* from the Original Merger Price.  *Id.* ¶ 15. The Special Committee was under *no* obligation to re-negotiate the binding Original Merger Agreement (and should not have done so).  *Id.*  Nonetheless, the Special Committee re-negotiated with the Buyer Consortium, eventually agreeing to "accept" a renegotiated price of US$61 per share

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

(the "**Revised Merger Price**")—a 23% decrease from the Original Merger Price and the bare amount necessary for Kroll, LLC—the financial advisor to the Special Committee—to receive its US$500,000 capped incentive fee. *Id.*

On March 1, 2022, the Company executed an amendment ("**Amendment No. 1 to the Original Merger Agreement**"), which, amongst other things, reflected the Revised Merger Price. Cecere Decl. ¶ 19.  Amendment No. 1 to the Original Merger Agreement also did not require MoM Protection. *Id.* ¶ 21.  In addition, the "go-shop" provision—a clause commonly included in a merger agreement, which compels a target company to seek competing bids—was shortened to only two weeks.  Proxy Statement at 14.

On March 29, 2022, the Company issued a proxy statement (the "**Proxy Statement**").  *Id*. The Proxy Statement explained that "[t]he purpose of the Merger is to enable the Participants to acquire 100% control of the Company." *Id.* at 9.  Nonetheless, the Special Committee recommended that minority shareholders vote in favor of the Merger, even at the Revised Merger Price. *Id.* ¶ viii-ix, 94.  An Extraordinary General Meeting of the Company's shareholders was held on April 27, 2022, to vote on the Merger.  Given that the so-called "Continuing Shareholders" and their affiliates—being certain member of the Buyer Consortium, other members of the Company's management, and the Company's largest shareholder beneficially held 56.2% of the Company's issued and outstanding shares at the time of the Proxy Statement and executed a support agreement to vote in favor of the Merger, the Merger was unsurprisingly approved.  Cecere Decl. ¶ 22 and Proxy Statement at 11–12.  On May 6, 2022, the Merger completed, and the Company was delisted from the NASDAQ Global Select Market.  Cecere Decl.  ¶ 23.  Mr. Chao served as Chairman of the Company's board of directors throughout the Merger's negotiation and approval.  Proxy Statement at E-1; Cecere Decl. ¶ 8 and Ex. 1, Proxy Statement at E-1.

**B.     The Appraisal Proceeding.**

On July 15, 2022, both the Company and Petitioners (along with other dissenting shareholders) initiated proceedings before the Grand Court under Section 238 of the Companies Act

6

of the Cayman Islands ("**Section 238**"), asking the Grand Court to determine the fair value of their former shares in the Company.   These proceedings have been consolidated as the Appraisal Proceeding.   Cecere Decl. ¶ 22.   Petitioners and the other dissenting shareholders will have the opportunity to present (among other things) documentary evidence, expert valuation evidence, witness testimony, and legal arguments to the Grand Court.   In determining the fair value of the dissenting shareholders' shares, the Grand Court will examine both the valuation of the Company and the fairness of the process that led to the Special Committee's and the Company's approval of the Merger.   *See* Declaration of Ingrid Mangatal ("**Mangatal Decl**.") ¶ 25.

### C.     Respondents and the Discovery Sought.

Respondents are Mr. Chao and the DCM Ventures Entities.   From 2000 and through at least the Merger's final approval by shareholders, Mr. Chao served as the chairman of the Company's board of directors.   Proxy Statement at E-1; Cecere Decl. ¶ 8.   Mr. Chao signed the Proxy Statement issued by the Company in connection with the Merger, as well as the notice of the extraordinary general meeting of shareholders held to approve the Merger.   *Id*. at vii, xii.   DCM Ventures is an investment fund, of which Mr. Chao is a co-founder and general partner.   *Id.* at E-1; Declaration of Duane L. Loft ("**Loft Decl.**") Ex. 8.   DCM Ventures also is a shareholder of the Company.   Loft Decl. Ex. 7.   None of the DCM Ventures Entities are among the dissenters to the Merger.

Petitioners' Application seeks discovery from Respondents on issues relevant to the Appraisal Proceeding, including: (i) the fairness of the Original Merger Price and the Revised Merger Price, and the process leading to their approval by the Special Committee and the Company's board; (ii) financial analysis, email or other correspondence, meeting minutes, and any other materials used, reviewed, or prepared by the Company's board or provided to shareholders; (iii) any alternative bids to acquire the Company; and (iv) the shareholders' approval of the Merger.   The Grand Court will accept and consider any relevant evidence submitted by the parties, so long as it is lawfully obtained within the jurisdiction in which it originates and not otherwise subject to an exclusionary rule of evidence.   Mangatal Decl. ¶ 36.   This requested discovery will accordingly significantly assist the

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE
PURSUANT TO 28 U.S.C. § 1782

1  Grand Court in evaluating the Merger and determining the fair value of Petitioners' former shares in

2  the Company.  *Id.* ¶ 43.

3                                              **ARGUMENT**

4          Section 1782 of Title 28 of the United States Code permits United States district courts to

5  grant discovery for use in a foreign proceeding.  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542

6  U.S. 241, 247 (2004).  A Section 1782 application must satisfy three "modest prima facie elements":

7  (1) the discovery is sought from a person that resides or is found within the District; (2) the discovery

8  is for use before a foreign tribunal; and (3) the applicant is an "interested person."  *Wallis*, 2018 WL

9  5304849, at *4.

10         If the statutory requirements are met, the court considers four discretionary "*Intel*" factors:

11  (1) whether the person from whom discovery is sought is a "nonparticipant in the matter arising

12  abroad"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad,

13  and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court

14  judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-

15  gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the

16  request is "unduly intrusive or burdensome."  *Intel*, 542 U.S. at 264–65.  No one factor should be

17  given more weight than the others, and no one factor is dispositive.  *See In re Mut. Assistance of*

18  *Local Court of Wetzlar, Germany*, 17–mc–00078–SKO, 2018 WL 2183966, at *3 (E.D. Cal. May

19  11, 2018); *see also In Matter of Appl. of Action & Prot. Found.*, No. C 14–80076 MISC EMC (LB),

20  2014 WL 2795832, at *4 (N.D. Cal. June 19, 2014) (noting that the *Intel* factors "involve overlapping

21  considerations, are considered collectively by the court in exercising its discretion, and are not stand-

22  alone categorical imperatives.").

23  **I.      The Application Satisfies the Three Statutory Requirements of 28 U.S.C. § 1782.**

24          **A.      Respondents are "Found In" this District.**

25          For a natural person, Section 1782's requirement that a respondent "reside[s] or be found" in

26  a district is satisfied when a person or entity is a resident of the district.  *See In re Vahabzadeh,*  No.

27

28
                                                        8
          MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE
                                    PURSUANT TO 28 U.S.C. § 1782

20-mc-80116-DMR, 2020 WL 5095131, at *2 (N.D. Cal. Aug. 28, 2020) ("First, Mostafa Vahabzadeh resides in San Ramon, California, which is in this district."). Mr. Chao confirmed in a sworn affidavit filed in New York State Court that he resides in Atherton, California. Loft Decl. Ex. 4; *see also* Loft Decl. Ex. 3. Therefore, Mr. Chao "resides" or "is found" in in this district.

This standard is also satisfied based on Mr. Chao's contacts with the forum. There does not appear to be binding precedent in this District on whether the "resides or is found" language in Section 1782 means the court must have personal jurisdiction over the party from whom Petitioners seek discovery. However, courts in other jurisdictions have found that Section 1782's statutory prerequisite is coextensive with personal jurisdiction. *See, e.g.*, *In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019) ("We hold, accordingly, that § 1782's 'resides or is found' language extends to the limits of personal jurisdiction consistent with due process."). General jurisdiction can be established by an individual's domicile, *Facebook, Inc. v. Banana ADS LLC*, No. CV 11–03619–YGR (KAW), 2013 WL 1873289, at *3 (N.D. Cal. Apr. 30, 2013) or, in the alternative, his or her "continuous and systematic" contacts with the forum. *In re Wireless Facilities, Inc. Derivatives Litig.*, 562 F. Supp. 2d 1098, 1102 (S.D. Cal. 2008). Respondent Mr. Chao satisfy both standards.

First, Mr. Chao is domiciled in this District. "[A] person is 'domiciled' in a location where he or she has established a 'fixed habitation or abode in a particular place,' and [intends] to remain there permanently or indefinitely." *Lew v. Moss*, 797 F.2d 747, 749–50 (9th Cir. 1986). Relevant to establishing domicile are the following "number of factors ([with] no single factor controlling), including":

> [C]urrent residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes.

*Id.* at 750. Aside from being a "current resident" of this District, a licensed private detective's proprietary databases and open source research showed that: Mr. Chao resides at and owns his residence in Atherton, California; Mr. Chao's wife also resides in Atherton, California; Mr. Chao owns another apartment in San Francisco, California; Mr. Chao's son resides in this District; Mr.

9

Chao has a phone number with a San Francisco/San Marin County area code; Mr. Chao is a manager/member of Zoro LLC, an active California registered LLC, which is affiliated with his Atherton residence; and a trust that appears to be associated with Mr. Chao and his wife is a manager/member of Addal Autos, LLC, an active California incorporated LLC, which is also affiliated with Mr. Chao's Atherton residence.  Declaration of Tyler Burtis ¶ 3.  In addition, the Proxy Statement states that Mr. Chao's place of business is 2420 Sand Hill Road, Suite 200 Menlo Park, California 94025, which is the DCM Ventures Entities' office.  Proxy Statement at 128 n.3, E-1.  The weight of these facts irrefutably indicates that Mr. Chao is domiciled in this District.  *See Lew*, 797 F.2d at 750 ("domicile is evaluated in terms of objective facts" and "statements of intent are entitled to little weight when in conflict with facts") (citation omitted).

Second, if the Court finds that Mr. Chao is not domiciled in this District, it should find that Mr. Chao maintains "continuous and systematic" contacts here, satisfying the first statutory requirement.  In *Wireless Facilities*, 562 F. Supp. 2d at 1103, the court found that a nonresident defendant had "continuous and systematic" contacts with California, even though the nonresident defendant "never intended to return to California once he left" over ten years earlier; the judge cited the non-resident defendant's "property ownership coupled with his other contacts with California, that is, maintaining a driver's license" and frequent visits.  *See also id.* (holding it was irrelevant that "the nonresident defendants claim the only reason [defendant] did not cut all ties with California was because his [ex-]wife" resided in California).  Mr. Chao thus undoubtedly "resides or is found" in this District.

As regards the DCM Ventures Entities, an entity "reside[s]" or is "found" in a district in which it incorporated or has its principal place of business. *Illumina*, 2020 WL 820327, at *3 ("A business entity is 'found' in the judicial district where it is incorporated or headquartered."); *In re Koninklijke Philips N.V.*, No. 17-MC-1681-WVG, 2018 WL 620414, at *1 (S.D. Cal. Jan. 30, 2018) ("Respondent maintains its principal place of business in San Diego, California, which is located within the Southern District of California.").  "Additionally, the found-in test is also satisfied if the target of discovery has a presence in a district." *Illumina*, 2020 WL 820327, at *3 ("BGI Americas

10

is a Delaware corporation which holds itself out as having a research facility in San Jose, California. Thus, it is also found in this District.") (collecting cases). The DCM Ventures Entities maintain their principal place of business, or otherwise has a presence, at 2420 Sand Hill Road, Suite 200 Menlo Park, California 94025. Loft Decl. Ex. 8, 12-16. Accordingly, the DCM Ventures Entities are "found" in this District.

In addition, Respondents also are properly subject to discovery of all responsive documents in their possession, custody, or control, notwithstanding that the discovery may be located abroad. *See, e.g.*, *Illumina*, 2020 WL 820327, at *10 (declining to "limit production to documents physically located within the United States" and explaining that "concerns about producing documents located outside the United States is largely anachronistic, as Respondents themselves disclosed that documents and information are often located in electronic storage, which can be accessed with equal effort from any location"); *see also Valle Ruiz*, 939 F.3d at 532–33 (holding that "§ 1782 can be used to reach documents stored overseas" and "the text of § 1782 authorizes discovery pursuant to the Federal Rules of Civil Procedure" which, in turn, "authorize extraterritorial discovery so long as the documents to be produced are within the subpoenaed party's possession, custody, or control.").

## B. The Discovery Sought is "For Use" in a Foreign Proceeding.

A Section 1782 application establishes the "for use" requirement by showing that the requested discovery may be submitted to and relied on by the foreign tribunal. "Thus, applicants must show that the material requested is tethered to a specific foreign proceeding and is relevant." *Qualcomm Inc for an Order Pursuant to 28 U.S.C. § 1782*, No. 18-MC-80134-NC, 2018 WL 6660068, at *2 (N.D. Cal. Dec. 19, 2018); *see also Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015) ("for use" element satisfied if materials sought can "be employed with some advantage or serve some use in the proceeding").[3] An applicant is not required to demonstrate that the information sought would be discoverable or admissible in the foreign proceedings. *In re Request for Judicial Assistance*

---

[3] *See also In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 131 (2d Cir. 2017) (holding that under "for use," the district court considers "the practical ability of an applicant to place a beneficial document—or the information it contains—before a foreign tribunal.").

11

1   *from the Seoul Dist. Criminal Court*, 555 F.2d 720, 723 (9th Cir. 1977) ("[F]ederal courts, in

2   responding to [§ 1782] requests, should not feel obliged to involve themselves in technical questions

3   of foreign law relating to . . . the admissibility before [foreign] tribunals of the testimony or material

4   sought.").

5          Here, the Grand Court will accept and consider any relevant evidence submitted by the

6   parties, so long as it is lawfully obtained within the jurisdiction in which it originates and not

7   otherwise subject to an exclusionary rule of evidence.  *See* Mangatal Decl. ¶¶ 36, 38.  Further, in

8   appraisal proceedings, the Cayman Islands Court of Appeal ("CICA") has emphasized the need to

9   consider all facts and matters that may have a bearing on the determination of fair value.  *Id.* ¶¶ 23–

10  25 (citing Mangatal Decl. Ex. B, *Qihoo 360 Technology Co., Ltd* (unreported, Grand Court, Mangatal

11  J, October 9, 2017, CICA at 19) ("The sole task of the Court is to determine the fair value of the

12  dissenters' shares. To do that, it needs full information.")).  The Grand Court will accept and consider

13  the requested discovery here, given its relevance in determining the fair value of Petitioners' former

14  shareholdings in the Company.  *Id.* ¶¶ 23–26.  Finally, the requested discovery is intended for use in

15  the Appraisal Proceeding, which was filed on July 15, 2022.  Cecere Decl. ¶ 26.  The requested

16  discovery is therefore plainly "for use" in the Appraisal Proceeding, and the Application thus satisfies

17  Section 1782's second statutory requirement.  *See In re Appl. of Temporary Servs. Ins. Ltd.*, No.09-

18  MC-48S(Sr), 2009 WL 2843258, at *2 (W.D.N.Y Aug. 28, 2009) (finding discovery sought for use

19  in Cayman Islands proceeding satisfied this prong).

20         **C.**     **Petitioners are "Interested Person[s]."**

21          "Litigants are included among, and may be the most common example of, the 'interested

22  person[s]' who may invoke § 1782."  *Intel*, 542 U.S. at 256; *In re Pioneer Corp. v. Technicolor, Inc.*,

23  No. LA CV18-04524 JAK (SSx), 2018 WL 4961911, at *5 (C.D. Cal. Sept. 12, 2018) ("An

24  'interested person' includes, but not limited to, parties in a foreign proceeding") (citing *Intel* at 256).

25  Petitioners are parties to the Appraisal Proceeding and thus "interested person[s]" under Section

26  1782.  Cecere Decl. ¶ 30.  All of Section 1782's statutory elements are satisfied here.

27

28

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE
PURSUANT TO 28 U.S.C. § 1782

4139-9239-7633, v. 39

## II.    The Discretionary *Intel* Factors Weigh in Favor of Discovery.

Once the statutory threshold requirements of Section 1782 are met, the district court should consider, in its discretion, whether to order the requested discovery.  To do this, the district court looks to the four *Intel* factors.  *See Intel*, 542 U.S. at 264.  Each of the *Intel* factors weighs in favor of granting the Application.

### A.    *Intel* I: Respondents are Nonparticipants in the Appraisal Proceeding.

The first *Intel* factor asks whether the party from whom discovery is sought is a party to the foreign proceeding.  The reason for this inquiry is because "when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad."  *Intel*, 542 U.S. at 264.

As explained in the accompanying Cecere Declaration, neither Respondent is a party in the Appraisal Proceeding, and therefore will not be subject to party discovery.  Cecere Decl. 25.  Further, because the DCM Ventures Entities have their principal place of business in the United States (and other locations in Tokyo and Beijing, *see* Loft Decl. Ex. 8), and Mr. Chao resides in the United States, the Grand Court will not have jurisdiction to compel discovery from either Respondent in the Appraisal Proceeding.  *Id.* ¶ 38.  Moreover, that Mr. Chao was an officer of the Company at the time of the Merger does not preclude this court from granting discovery under Section 1782.  The Ninth Circuit has held that "[a] corporation is a separate legal entity from its employees, including its president."  *In re Premises Located at 840 140th Avenue NE, Bellevue, Washington*, 634 F.3d 557, 567 (9th Cir. 2011) (rejecting argument that a company and its president were the same because "the subject of the subpoena is Global Fishing, which is *not* a party to the underlying criminal case in Russia against Gontmakher").

That applies with more force here, where Mr. Chao is no longer an officer of the Company, *see* Cecere Decl. ¶ 8, and so his personal documents and testimony are not necessarily within the control of the Company or subject to production in the foreign proceeding.  Mangatal Decl. ¶ 18.  In

similar circumstances, courts have held that discovery is appropriate.  *See, e.g.*, *In re Evenstar Master Fund SPC*, No. 20-MC-418 (CS) (JCM), 2021 WL 3829991, at *11 (S.D.N.Y. Aug. 27, 2021), *aff'd*, 2021 WL 5498283 (S.D.N.Y. Nov. 23, 2021) ("Mo [the adversary in the foreign proceeding] and each Respondent are not one in the same simply because of Mo's executive positions, and as New York not-for-profit corporations, Respondents are not within the Grand Court's jurisdiction," thus the first *Intel* factor weighed in favor of discovery); *In re Kidd*, No. 3:20-CV-00800 (KAD), 2020 WL 5594122, at *4 (D. Conn. Sept. 18, 2020) (where "Petitioner seeks discovery from Respondents by virtue of their role as officers, directors, or indirect controlling parties for the defender entities that control Lime Rock V and advised it in connection with the Transaction," first *Intel* factor weighed in favor of discovery because the respondents "maintain[ed] their own legal identities and interests pertinent to the foreign litigation and where their relationship to the sought-after documents and testimony is more than merely custodial"); *see also In re Belparts Grp., N.V.*, No. 3:21-MC-0062 (VAB), 2021 WL 4942134, at *4 (D. Conn. Oct. 22, 2021).

Accordingly, the first *Intel* factor weighs in favor of granting the Application.  *See, e.g.*, *In re Republic of Ecuador*, No. C-10-80225 MISC CRB (EMC), 2010 WL 3702427, at *3 (N.D. Cal. Sept. 15, 2010) ("[Discovery target] is not a party in the international arbitration, and therefore this factor weighs in the [petitioner's] favor."); *In re Mireskandari*, No. 12-CV-2865-IEG (DHB), 2012 WL 12877390, at *3 (S.D. Cal. Dec. 20, 2012) (first *Intel* factor satisfied when respondent was "not subject to the English court's jurisdiction").

**B.**      ***Intel* II: The Grand Court Will Be Receptive to the Requested Discovery.**

Under the second *Intel* factor, courts consider the "nature," "character," and "receptivity" of the foreign tribunal.  *Intel*, 542 U.S. at 244.  The vast majority of recent cases in this Circuit have held that the burden is on Respondent to show "authoritative proof" that a foreign tribunal would be unreceptive to evidence obtained pursuant to Section 1782.  *See In re Nokia Techs. Oy*, No. 21MC1487 (MSB), 2022 WL 788702, at *2 (S.D. Cal. Mar. 15, 2022) ("[I]n the absence of authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782,

14

courts tend to err on the side of permitting discovery.") (quoting *Palantir Techs., Inc. v. Abramowitz*, 415 F. Supp. 3d 907, 915 (N.D. Cal. 2019)); *In re: Application of Joint Stock Co. Raiffeinsenbank*, No. 16-MC-80203-MEJ, 2016 WL 6474224, at *5 (N.D. Cal. Nov. 2, 2016) ("[C]ourts look for 'authoritative proof that a foreign tribunal would reject evidence obtained with the aid of § 1782.'") (citation omitted); *see Illumina*, 2019 WL 5811467, at *4 ("The second *Intel* factor weighs in favor of discovery unless the foreign tribunal in question has expressly made it clear that it would not accept the evidence.").

The Grand Court will consider any evidence that has a bearing on determining the fair value of the Company's shares.  *See* Mangatal Decl. ¶ 43.  Indeed, the CICA has underscored that third-party materials are relevant in Section 238 proceedings, reasoning:

> [I]f third party valuations in the possession of the Company are relevant, so are third party valuations not in the possession of the Company….After all, the question of fair value is closely related to the question of what a willing buyer and a willing seller would exchange for the shares of the Company (or for the Company as a whole): and that question is closely related to valuations conducted within the market generally.

Mangatal Decl. ¶ 27 (citing Mangatal Ex. A (*Re Qunar Cayman Islands Limited* (Unreported, CICA, April 10, 2018, CICA No 24 of 2017) at paragraph 60)).  This includes discovery obtained under Section 1782, including pre-trial deposition testimony, which the CICA has explicitly held "is a right conferred by U.S. law—it is not a right conferred by, or *to be withheld under*, *Cayman law*." Mangatal Decl. Ex. C (*Lyxor Asset Management S.A. v. Phoenix Meridian Equity Limited* [2009 CILR 553] at paragraph 57 (emphasis added)).

Accordingly, the Grand Court has made procedural orders in Cayman Islands appraisal proceedings that acknowledge and accommodate discovery obtained through Section 1782. Mangatal Decl. ¶ 40.  Further, multiple U.S. courts have recognized that Cayman Islands' courts are

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

receptive to evidence obtained through Section 1782,[4] including a court in this Circuit, which granted document and deposition discovery for use in a different Cayman Islands appraisal proceeding.  *See FourWorld Event Opportunities, LP v. Houlihan Lokey, Inc.*, No. 1:21-mc-1019-CAS (JPR), ECF No. 56 (C.D. Cal. Jan. 6, 2022) (Loft Decl. Ex. 10).  Three other district courts also recently granted Section 1782 applications for both document discovery and a deposition for use in different Cayman Islands appraisal proceedings.  *See In re FourWorld Event Opportunities, LP*, No. 21-mc-00283-RGS, ECF No. 6 (D. Del. July 29, 2021) (Loft Decl. Ex. 6); *In re Application of Athos Asia Event Driver Master Fund*, No. 4:21-MC-00153-AGF, 2021 WL 1611673, at *3 (E.D. Mo. Apr. 26, 2021) ("There is no indication in the record here that a discovery order would be unwelcome by the Cayman Islands court."); *In re Application of Athos Asia Event Driver Master Fund*, No. 1:21-MC-00208-GBD, ECF No. 8 (S.D.N.Y. Mar. 3, 2021) (same) (Loft Decl. Ex. 5).

Moreover, here, the Grand Court has been informed that the dissenting shareholders may bring foreign discovery applications, including under Section 1782.  Cecere Decl. ¶ 27.  The Grand Court did not place any restrictions on dissenting shareholders from doing so.  *Id.*  Therefore, the second *Intel* factor weighs heavily in favor of granting the Application.

---

[4] *See also In re Kuwait Ports Auth.,* No. 20-MC-00046-ALC, slip op. at *10 (S.D.N.Y. Dec. 13, 2021) ("The record contains no clear and express directive under Cayman law or policy that would demonstrate a lack of receptivity to judicial assistance from federal courts in the United States."); *In re Hopkins*, No. 20-MC-80012-SVK, 2020 WL 733182, at *3 (N.D. Cal. Feb. 13, 2020) (granting application where "there is no indication that the Cayman Islands court would not be receptive to the information sought by [petitioner]."); *In re Dickson*, No. 20-MC-51 (RA), 2020 WL 550271, at *1 (S.D.N.Y. Feb. 4, 2020); *In re Platinum Partners Value Arbitrage Fund L.P.*, 583 B.R. 803 (Bankr. S.D.N.Y. 2018) ("In support of this assertion, the Liquidators present unrebutted that, far from being hostile to Cayman litigants seeking evidence under U.S. law, Cayman Islands' courts are in fact receptive to evidence obtained through U.S. discovery procedures, even if such evidence may not be discoverable under Cayman law."); *In re Penner*, No. 17-CV-12136-IT, 2017 WL 5632658, at *3 (D. Mass. Nov. 22, 2017) (finding the Grand Court "is open to receiving § 1782 discovery"); *Gushlak v. Gushlak*, 486 F. App'x 215, 218 (2d Cir. 2012); *In re Gushlak*, No. 11–MC–218 (NGG), 2011 WL 3651268, at *5 (E.D.N.Y. Aug. 17, 2011) ("Second, Respondents have not presented the court with any authoritative proof that the Grand Court would not be receptive to the discovery requested"); *Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 439 (S.D.N.Y. 2011) (granting Section 1782 applications seeking documents for use in Cayman Islands proceedings).

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

1

2

### C.   *Intel* III: Petitioners are Not Circumventing Foreign Proof-Gathering Restrictions.

3

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to

4

circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United

5

States." *Intel*, 542 U.S. at 265.  "[P]roof-gathering restrictions' are best understood as rules akin to

6

privileges that prohibit the acquisition or use of certain materials."  *In re Application of Credit Suisse

7

*Virtuoso SICAV-SIF In Respect of the Sub-Fund Credit Suisse (Lux) Supply Chain Finance Fund*,

8

No. 21-MC-80308-JCS, 2022 WL 1786050, at *11 (N.D. Cal. June 1, 2022) (quoting *Mees v. Buiter*,

9

793 F.3d 291, 303 n.20 (2d Cir. 2015)) (emphasis original); *see also In re Hattori*, No. 21-mc-80236-

10

TSH, 2021 WL 4804375 at *4 (N.D. Cal. Oct. 14, 2021) ("The question under this prong is whether

11

the foreign court would be affronted by the applicant's resort to U.S. discovery.").

12

Accordingly, under this factor, "the Court is not required to determine whether the evidence

13

obtained from [Respondent] would be discoverable or admissible in the [foreign] proceedings." *In

14

*re Mireskandari*, No. 12-CV-2865-IEG (DHB), 2012 WL 12877390, at *3 (S.D. Cal. Dec. 20, 2012)

15

("Notwithstanding, much of the parties' arguments to this Court relate to whether the evidence would

16

be admissible in the foreign proceedings and, even less important to this Court, whether the evidence

17

provides a substantive basis for overturning the Tribunal's decision.  Such issues are appropriately

18

suited for the English courts.").  In addition, there is no "'quasi-exhaustion requirement,'" i.e., a

19

requirement that Petitioners first seek the discovery in the foreign court.  *Illumina*, 2020 WL 820327,

20

at *6 (no exhaustion requirement); *de Leon v. Clorox Company*, No. 19-mc-80296-DMR, 2020 WL

21

4584204, at *8 (N.D. Cal. Aug. 10, 2020) (no requirement to first seek discovery in foreign tribunal);

22

*In re PJSC Uralkali for an Ord. Pursuant to 28 U.S.C. § 1782*, No. C18-1673JLR, 2019 WL 291673,

23

at *5 (W.D. Wash. Jan. 23, 2019) ("[A]n applicant need not exhaust, or even commence, its discovery

24

efforts in the foreign proceeding before resorting to § 1782.").

25

The requested discovery here does not attempt to circumvent any proof-gathering restrictions

26

in the Cayman Islands.  To the contrary, the Grand Court is receptive to evidence obtained under

27

Section 1782, *supra* II.B., expects parties to obtain the evidence they need is necessary to prosecute

28

17

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE
PURSUANT TO 28 U.S.C. § 1782

1  their case, and there is no requirement to obtain permission from the Grand Court before seeking

2  relevant evidence abroad.  Mangatal Decl. ¶ 35.  Moreover, the CICA has expressly held that "prima

3  facie a party who can invoke the jurisdiction of the US District Court under § 1782 may choose to

4  do so."  Mangatal Decl. Ex. C (quoting *Lyxor Asset Management S.A. v. Phoenix Meridian Equity*

5  *Limited* [2009 CILR 553] at paragraph 57) (emphasis added).  And the Grand Court is aware that the

6  dissenting shareholders may bring Section 1782 applications and placed no restrictions on their

7  ability to do so.  Cecere Decl. ¶ 27.  The third *Intel* factor, therefore, also weighs in favor of granting

8  the Application.

9         **D.      *Intel* IV: The Subpoenas are Not Unduly Burdensome.**

10        The requested discovery is not "unduly intrusive or burdensome."  *Intel*, 542 U.S. at 265.

11  "The proper scope of [discovery] under § 1782 application is generally determined by the Federal

12  Rules of Civil Procedure."  *In re Credit Suisse Virtuoso*, No. 21-mc-80308-JCS, 2022 WL 1786050,

13  at *12 (N.D. Cal. June 1, 2022).  "Quite broad" discovery can be "relevant and proportional to the

14  needs of the case" and within the "scope of discovery permitted under § 1782, [which] is coextensive

15  with the scope of discovery permitted by Federal Rule of Civil Procedure 26(b)(1)."  *In re Bayerische*

16  *Motoren Werke AG*, No. MC-22-00016-PHX-SPL, 2022 WL 1092804, at *2 (D. Ariz. Apr. 12,

17  2022).  Here, the discovery is relevant and proportional in the context of a multibillion-dollar dispute.

18            1.      The Subpoenas are Properly Limited in Scope.

19        *First*, the Subpoenas are tailored to seek only documents and information directly relevant to

20  critical issues in the Appraisal Proceeding, including: (i) the fairness of the Original Merger Price

21  and the Revised Merger Price, and the process leading to their approval by the Special Committee

22  and the Company's board; (ii) financial analysis, email or other correspondence, meeting minutes,

23  and any other materials used, reviewed, or prepared by the Company's board or provided to

24  shareholders; (iii) any alternative bids to acquire the Company; and (iv) the shareholders' approval

25  of the Merger.  These issues will be central in the Appraisal Proceeding.  *See* Mangatal Decl. ¶¶ 24–

26  26 ; *PJSC*, 2019 WL 291673, at *6 (noting that, "as a matter of principle, the court is particularly

27

28
                                          18
─────────────────────────────────────────────────────
MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE
                    PURSUANT TO 28 U.S.C. § 1782

wary of denying [§ 1782] discovery on relevance grounds").  Insofar as the Requested Discovery

includes documents that may possibly be obtained through the discovery in the Appraisal Proceeding,

that does not weigh against granting the Subpoena.  Courts have recognized the benefits to

duplicative discovery, including in a Section 1782 context.  In a recent Section 1782 application

brought in this Circuit in support of different Cayman Islands appraisal proceedings, the district court

rejected the respondent's argument that discovery should not be ordered through Section 1782

because it had provided certain documents to the company for production in that appraisal

proceeding.  The district court held that the petitioner was "entitled to, just as someone would be in

conducting discovery in a regular civil case in the United States, to test two productions against each

other and . . . to ask you for documents to ensure that . . . what they are getting from the Company is

exhausted and vice versa." *FourWorld Event Opportunities, LP v. Houlihan Lokey, Inc.*, No. 21-

mc-1019, ECF No. 40, at 26-27 (C.D. Cal. Nov. 22, 2021) (Loft Decl. Ex. 11).[5]

    *Second*, the discovery requests are also temporally limited to a two-year period of July 1,

2020 – April 27, 2022—being approximately two months prior to the Company engaging a strategic

consultant to explore potential transactions, to the date of the extraordinary general meeting of

shareholders that approved the Merger.[6]  *PJSC*, 2019 WL 291673, at *7 ("The delimited timeframe

and subject matter distinguish Uralkali's application from the sort of open-ended petitions that courts

have rejected as overbroad.").

---

[5] *See also Kuwait Ports Auth.*, 2021 WL 5909999, at *9 (holding that "to the extent there is some overlap in the information sought here and in the [Foreign] Proceeding . . . the proposed subpoena would likely provide corroborating information that would bear on those proceedings."); *In re Aso*, 19 MC 190 (JGK) (JLC), 2019 WL 2345443, at *8 (S.D.N.Y. June 3, 2019) ("[T]he subpoenaed parties are uniquely positioned to provide corroborating information."); *AbbVie Inc., et al. v. Boehringer Ingelheim Int'l GmbH*, No. 17–1065–MSG, 2018 WL 2337133, at *2 (D. Del. May 23, 2018) (denying a protective order where there was "considerable overlap, although not exact congruence" between defendant's party and third party RFPs to "serve as a check on whether [Plaintiff] has produced all relevant information").

[6] *See In re Gushlak*, 2011 WL 3651268, at *6 (E.D.N.Y. Aug. 17, 2011) (holding that a Section 1782 request, like any other discovery request, is "reasonably calculated to lead to relevant matter if there is any possibility that the information sought may be relevant to the subject matter of the action"); *First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 23 (2d Cir. 1998) (finding reasonableness of subpoena that only sought documents which concern "the precise subject matter of the underlying [proceedings]").

19

*Third*, Petitioners are willing to meet and confer with Respondents to address any burden concerns.  If the Court has remaining concerns about undue burden, granting the Application will not preclude Respondents "from bringing a motion to quash or modify" the discovery sought.  *Joint Stock Co. Raiffeinsenbank*, 2016 WL 6474224, at *7.  If the Court finds merit to such objections, "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright," and precluding any discovery into these issues directly probative of the matters in the Appraisal Proceeding.  *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 (2d Cir. 1995).

### 2. Depositions Are Appropriate Here.

As courts in this Circuit have noted in other 1782 applications, Rule 30(b)(6) "depositions of corporate officers are standard practice in U.S. civil litigation and are not burdensome," and may properly be ordered in a 1782 application.  *See, e.g.*, *HRCHainan Holding Co., LLC v. Yihan Hu*, No. 19-mc-80277-TSH, 2020WL 906719, at *15 (N.D. Cal. Feb. 25, 2020) (holding that a 30(b)(6) deposition sought through a 1782 application was appropriate as "the Rules of Civil Procedure themselves ensure that the length, time and place of the deposition do not impose an undue burden."); *Illumina*, 2020 WL 820327, at *10 (same).  Given the significance of discovery from Respondents to the Appraisal Proceeding, a deposition of Mr. Chao and a 30(b)(6) deposition of a corporate representative of the DCM Ventures Entities is appropriate, relevant to the determination of fair value of the dissenting shareholders former shareholdings in the Company, and will significantly aid the Grand Court.  *See FourWorld*, No. 21-mc-00283-RGS, ECF No. 6 (Loft Decl. Ex. 5) (granting a Rule 30(b)(6) deposition for use in a Cayman Islands appraisal proceeding).

If the Rule 30(b)(6) witnesses for the DCM Ventures Entities do not reside, are not employed, or do not regularly conduct business within 100 miles of the place of compliance, Petitioners are willing to meet and confer on a location convenient for the parties, including if necessary by remote means.  Fed. R. Civ. P. 45(c)(1); *see also, e.g.*, *Walsh v. Tara Constr., Inc.*, No. 19-CV-10369-AK, 2022 WL 1913340, at *2 (D. Mass. June 3, 2022) ("The Court thus concludes that it may issue a

20

1   subpoena under Rule 45 . . . for a witness to provide remote testimony from any place within 100

2   miles of her residence, place of employment, or place where she regularly conducts business.  This

3   interpretation, which derives naturally from the plain language of Rules 43 and 45 and their

4   accompanying Advisory Committee notes, is the prevailing position among district courts both

5   within and outside this circuit." (collecting cases)); *United States v. $110,000 in U.S. Currency*, No.

6   21 C981, 2021 WL 2376019, at *3 (N.D. Ill. June 10, 2021) (same); *Int'l Seaway Trading Corp. v.*

7   *Target Corp.*, No. 0:20-mc-00086-NEB-KMM, 2021 WL 672990, at *5 (D. Minn. Feb. 22, 2021)

8   ("the 100-mile limitation now found in Rule 45(c) has to do with the place of *compliance*; not the

9   location of the court from which the subpoena issued" (emphasis in original)), *appeal dismissed*,

10  2021 WL 5365242 (8th Cir. June 30, 2021).

11                                        **CONCLUSION**

12          For the foregoing reasons, Petitioners respectfully requests that the Court grant their petition

13  for an order pursuant to 28 U.S.C. § 1782.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21
MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE
PURSUANT TO 28 U.S.C. § 1782

1    Dated: January 20, 2023

2

3                                        By:    */s/ Frank Busch*    _____

4                                        **WAGSTAFFE, VON LOEWENFELDT, BUSCH &**
                                         **RADWICK LLP**

5                                        Frank Busch (258288)
                                         busch@wvbrlaw.com

6                                        100 Pine Street, Suite 2250
                                         San Francisco, CA  94111

7                                        Telephone: (415) 357-8900

8
                                         **PALLAS PARTNERS (US) LLP**

9                                        Duane L. Loft*
                                         Duane.Loft@pallasllp.com

10                                       Melissa J. Kelley*
                                         Melissa.Kelley@pallasllp.com

11                                       Brianna Hills Simopoulos*
                                         Brianna.Simopoulos@pallasllp.com

12                                       John McAdams*
                                         John.Mcadams@pallasllp.com

13                                       75 Rockefeller Plaza
                                         New York, NY 10019

14                                       Telephone: (212) 970-2300

15
                                         **Pro hac vice* applications forthcoming

16
                                         Counsel for Petitioners

17

18

19

20

21

22

23

24

25

26

27

28
                                         22
     MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE
                           PURSUANT TO 28 U.S.C. § 1782